No. 16,386.

## THE CITY OF INDIANAPOLIS *v*. CONSUMERS GAS TRUST COMPANY.

SUPREME COURT.—*Jurisdiction.*—If the validity of an ordinance of a city is called in question by the judgment of the lower court, the jurisdiction of an appeal therefrom is in the Supreme Court.

MUNICIPAL CORPORATION.—*Power to Regulate Streets can not be Used to Destroy Valid Contracts with City.*—The power of a city to regulate and control the use of its streets does not give such city the additional right to prohibit, annul, or destroy rights arising out of a valid contract.

SAME.—*Legislative Contract.*—*Franchise to lay Gas Mains in Street.*—*Subsequent Impairment of Contract.*—Power granted by a city to a gas company to lay, maintain, and repair gas pipes in its streets is a legislative contract, investing such company with the right of property in the franchise thus granted, which the city, unless the right is reserved, can not take away or impair without the company's consent by any subsequent act. Such a contract is as binding and enforceable as that of a private corporation or person.

SAME.—*Limit of Power to Regulate Streets.*—The exclusive power of a city to regulate and control the use of its streets is not restricted to that of transit alone, but also extends to the laying of gas and water pipes, and to the promotion of the public health and convenience.

SAME.—*Repeal of Right to lay Mains in Street, New Method of Improving Streets.*—*Subsequent Restriction of Right to lay or repair Mains.*—The grant of a right by a city to a gas company to lay and repair mains in its streets can not be subsequently taken away from such company on the ground that new and other methods of improving streets had been introduced and adopted by the city after such grant had been made, and especially is this true where the original grant bound such company to speedily repair such portions of the street as it opened for the purpose of laying and repairing such mains. Nor can such city, by a subsequent ordinance, require such company to first obtain permission of it to lay a main in or upon a street or to repair its mains, when it had that right, without first obtaining such permission, under its original grant or franchise.

SAME.—*Grant of Franchise not Compulsory.*—*Conditions Accepted become a Contract.*—*Police Power.*—There is no compulsion on the part of a city to grant to any gas company a privilege to use the streets; and if it grant a franchise it has the right to prescribe and

impose terms and conditions, which become, when accepted and complied with, a binding contract. By such grant the city does not part with or bargain away its rights under the police power to protect the public health, the public morals, and the public safety.

SAME.—*Construction of Penal Ordinances.—Exceptions.*— Penal ordinances are not always construed literally, and courts will make the necessary exceptions.

From the Marion Circuit Court.

*L. Bailey, R. O. Hawkins* and *H. E. Smith,* for appellant.

*W. P. Fishback, W. P. Kappes, R. N. Lamb* and *R. Hill,* for appellee.

JORDAN, J.—On the 14th day of November, 1890, the appellant, the city of Indianapolis, filed in the mayor's court its verified complaint against the Consumers' Gas Trust Company, appellee herein, whereby it charges said company with having violated section 1 of an ordinance of said city, passed by the common council and board of aldermen on the 24th day of March, 1890, by cutting and digging into a certain macadam pavement upon the roadway of Madison avenue, a public street of said city, without first having secured the consent of said council and board of aldermen so to do, and without having filed a bond with the city clerk. A trial was had in the mayor's court upon a plea of not guilty by the appellee, and resulted in the conviction of appellee, and a fine of ten dollars was assessed and adjudged against it. An appeal to the circuit court was taken by the gas company, and in the latter court the company waived the general denial and all rights to introduce evidence without plea, and relied solely upon the defense set up in its answer filed in the circuit court. In the answer filed in that court the appellee alleged, substantially, the following facts: That on June 27, 1887, the city of Indianapolis passed a general ordinance, known as No. 14, which

ordinance was set out and made a part of said answer; that in November, 1887, the appellee was organized as a corporation for the object of supplying gas to said city; that afterwards, the same year, it duly accepted said ordinance, filed its bond, and in all things complied with the provisions and conditions thereof; that in 1888, and early in 1889, the said gas company, at great expense and to the approval of the city, laid its mains in the streets thereof, and, among others, on Madison avenue, and is engaged in supplying over ten thousand consumers of natural gas; that later, in 1889, a macadam, or broken stone pavement, was laid by the city on Madison avenue; that in March, 1890, the common council and board of aldermen of said city passed the ordinance referred to in the complaint and alleged to have been violated by the defendant, and that the same was passed without the knowledge or consent of the defendant, and that defendant has never accepted the same or consented thereto, and the appellee further alleges in its answer that it admits that it cut into the macadam pavement and that it did not procure the consent of the council and board of aldermen, other than the consent derived under the general ordinance No. 14, a copy of which is filed with the answer, and that it did not file any bond other than that provided for in said ordinance 14.

Said answer further alleged that the acts complained of. as a violation of the ordinance mentioned in the complaint, consisted only in the digging of a trench in the said street for the purpose of making and maintaining necessary repairs in the service and connections with the premises, No. —— Madison avenue, and in no other or different act; that said repairs were necessary in order to enable the consumer at No. —— on said avenue to secure a sufficient supply of natural gas; that in order to make said repairs it was necessary for it to dig

such trench and to cut into the macadam pavement and said repairs could not otherwise be made; that in doing said work defendant acted in all things under and according to said general ordinance No. 14, and did not act in violation thereof; that the work was done in a careful and prudent manner, according to the requirement of said ordinance No. 14, and that it restored the street and pavement and left it in as good condition as it was before it was opened for making the repairs.·

The appellant demurred to the answer, which was overruled by the court and an exception reserved. The appellant declined to plead further and elected to stand by its demurrer, and a judgment was rendered against it for costs.

In this court the appellant has assigned for error the overruling of its demurrer to the answer.

The ordinance of 1890, upon which this prosecution was based, and a copy of which was made a part of the complaint, is as follows:

"Be it ordained by the common council and board of aldermen of the city of Indianapolis, That it shall be unlawful for any person, firm, or corporation to cut or dig into any street or alley that shall have heretofore been paved with brick or any form of block, macadam or asphaltic pavement, until such person, firm or corporation, for whose benefit such proposed opening is to be made, shall have first secured the consent of the common council and board of aldermen so to do; and shall have filed in the office of the city clerk a bond, with at least two freehold sureties, to the approval of the mayor, guaranteeing the speedy completion and proper execution of said work, and binding the principal and sureties to protect the city from all liability whatsoever on account of injuries or accidents to persons or property, or both, occasioned by any such proposed opening; and further

binding themselves to keep and maintain such part of such street or alley, so cut into or opened, in good condition during the period yet to run on the contract, under which said street or alley was originally paved.

"Any person violating any provision of this ordinance shall, upon conviction, be fined in any sum not exceeding one hundred dollars."

The ordinance No. 14, passed by the city of Indianapolis on the 27th day of June, 1887, a copy of which was set out in the answer of the appellee and made a part thereof, and upon which it relies in justification of its acts, is substantially as follows:

By section 1, it was provided that "Any corporation * * * may lay, extend, and maintain mains, branches, pipes and conduits through the streets, avenues, lanes, alleys and public grounds of said city, and may take up for the purpose of altering, changing or repairing the same, from time to time, as the necessities of the case may require, for the purpose of supplying said city and its inhabitants with natural gas, under and subject to the restrictions and upon the conditions hereinafter set out."

By section 2 a bond of $50,000 was required to be first filed, conditioned:

(1) Not to molest other pipes or sewers.

(2) To restore all streets, etc., "to as good condition as they were before, to maintain the same in such condition for one year," and where the city "shall have taken a bond or agreement from any contractor to keep and maintain the pavements in any street in good repair for a given time, the said corporation * * * shall keep that portion of any such street * * * in good condition and repair for the same period of time stipulated in such bond or agreement between the city and the contractor."

(3) To clear away dirt and rubbish.

(4) To reimburse the city for expenses in repairing or clearing away rubbish.

(5) To indemnify the city against all claims for damages.

(6) To begin work within sixty days after the acceptance of ordinance, and lay twenty-five miles of mains the first year.

By section 3 the mayor may require the renewal of the bond if insufficient by reason of insolvency or death of sureties.    Section 4 to section 10 inclusive prescribe minutely the method and safeguards to be used in doing the work, and that the city may enforce observance.  By section 11 the prices of gas are fixed.   By section 12 the city reserves the right to require a license fee to be paid after five years.  By section 13 the duty is imposed to supply gas and extend mains on certain conditions. By section 14 the corporation is required first to have a pipe line from the gas field.   By section 15 the acceptance of the ordinance is required to be in writing, filed with the clerk.   Section 16 imposes a penalty of $100 for violations.    Section 17 reserves the right to the city to grant privileges to other gas companies.   By section 18 the city reserves the right to buy the plant of the company after ten years.

The validity of an ordinance being called in question, the jurisdiction of the appeal is [properly in this court. The contentions of appellant are:

1st.  That by the terms of the ordinance of June 27, 1887, the city reserved the right to bind the appellee by the ordinance of 1890.

2d.  That the macadamized pavement in question was laid after the adoption of the first ordinance, and hence the *status* was so altered as to change the right of appellee to make the cut or opening on Madison avenue.

3d. That although the first ordinance and the acceptance thereof, upon the part of the gas company, constituted a contract, yet it is subject to the exercise of the police power upon the part of the city, which power can not be bargained away, and that the ordinance of 1890 is a valid exercise of that power.

These propositions are controverted by the appellee, and it further contends that the second ordinance is not valid and binding upon it for the reason that it impairs the obligations of the Legislative contract existing between the appellant and appellee by virtue of the ordinance of 1887, and its acceptance thereunder, and that it has in no way, under the alleged facts in its answer, violated the penal ordinance in question.

At the time of the passage of the two ordinances mentioned, the city of Indianapolis was operating under the general statute of this State applying to cities, and the exclusive power to regulate and control the use of its streets was clearly granted to it by the Legislature. R. S. 1881, section 3161; R. S. 1894, section 3623. This power to regulate, however, must be held not to carry with it the additional right to prohibit, annul, or destroy rights arising out of contract. This we think must be accepted as a well settled legal principle. Under an act of the Legislature approved March 7, 1887, and in force on and after that date, Acts of 1887, p. 36, cities were granted the power to regulate the supply, distribution and consumption of natural gas, and to require persons, or corporations, to whom the privilege of using the streets is granted for the supply and distribution of such gas, to pay a reasonable fee for such franchise. This power the council and board of aldermen of appellant seemed to have exercised in the passage of the ordinance of June 27, 1887. It is not controverted by the appel-

lant's learned counsel, that this ordinance when accepted by the gas company constituted a contract, and was binding upon both the company and appellant. It was what is termed a Legislative contract, and as such came within the provisions of that clause of the Constitution of the United States, which forbids the impairment of the obligations of a contract.

It invested the appellee with the right of property in the franchise granted, which appellant, unless the right was reserved, could not take away or impair without appellee's consent by any subsequent act. *Dartmouth College* v. *Woodward*, 11 Wheat. 511; *Mayor* v. *City of New York*, 32 N. Y. 261.

This contract being within the scope of the power invested in appellant, and not in violation of public policy nor tainted with fraud, must be as binding and enforceable as that of a private corporation or person. *City of Indianapolis* v. *Indianapolis Gas Light and Coke Co.*, 66 Ind. 396.

While it is true, as herein stated, that the exclusive power to regulate and control the use of its streets is vested in the city, this use, however, is not restricted to that of transit alone, but it also extends to the laying of gas and water pipes and to the promotion of the public health and convenience. *Cummins* v. *City of Seymour*, 79 Ind. 491; Angell Highways, section 216.

Keeping in view these principles of law, as herein stated, we will consider the respective contentions of the parties to this action.

1st. Did the appellant, by the terms of the ordinance of 1887, reserve the right to bind the appellee by the provisions of that of 1890? The clause in the former ordinance relied on by the appellant as giving it that power is as follows:

"It shall be, and is hereby made the duty of the city

attorney to institute such legal proceedings as may be necessary to compel a compliance with the provisions of this ordinance and with all other ordinances now in force or hereafter passed, and all acts of the General Assembly affecting such natural gas companies."

We do not think that the construction of this clause by the learned counsel for appellant can find any legal support to maintain it. Guided by a well established rule, that the entire ordinance must be read and construed together, the meaning and object of this clause is obvious. In section 9 of the ordinance it is provided that when work is being done in an improper manner the council and board of aldermen shall have the power to pass and enforce such ordinances as will remedy the defects. In other sections it is provided that certain rights are to be exercised by the means of the adoption of ordinances, and we think it is the enforcement of these that are contemplated and which are in harmony with the first ordinance. In fact, this clause does not partake of the character of a reservation, but more properly defines the duties of the city attorney.

2d. Does the fact that the pavement in question was laid upon the street after the passage of the ordinance of 1887 and its acceptance by appellee, restrict the rights granted to it to lay, extend, and maintain its gas mains through the streets of appellant in a prudent and lawful manner and from time to time to take up the same, repair and replace them? We think not. The appellee had been granted the right to use the streets for the purpose mentioned, and the mere fact that any particular street was thereafter paved with brick or macadam would not deprive appellee of exercising its rights under the ordinance upon which it relies. This is manifest when we recognize that the conditions of the bond required of the corporation availing itself of the franchise granted were,

that all streets should be restored to as good a condition as they were before, and to maintain the pavement in good repair where the city had an agreement with the contractor to like effect. As said by the learned counsel for appellee: "If a macadamized pavement covers up the appellee's rights, so would one constructed of gravel, and so would even slight repairs, for the condition of the streets would be changed from what it was when the ordinance was accepted. It is evident, we think, that this contention has no support.

3d. Is the ordinance [of 1890 a valid exercise of the police power which the city did not surrender in granting to appellee the franchise in question? There was no compulsion on the part of the appellant to grant the privilege to use its streets to any particular company. It was within its discretion to give or not to give its consent, and it had the right to withhold it from all gas companies. *Citizens' Gas, etc., Co.* v. *Town of Elwood*, 114 Ind. 332.

It was not limited alone to the granting of this franchise, but it had the right to prescribe and impose terms and conditions. Dillon Munic. Corp., section 706; Wood Rys., 2d vol., page 986; Elliott Roads and Streets, page 565.

When these terms and conditions, proposed by the appellant, were accepted by the appellee and complied with, it became a binding contract. *Western Paving and Supply Co.* v. *Citizen's Street R. R. Co.*, 128 Ind. 531.

But the appellant contends that such grants are but the exercise of police power, and may be changed or repealed by the granting power. It is true that in grants to persons or corporations to supply gas and the like to the inhabitants of towns or cities, the municipality does not part with or bargain away its right under the police power to protect the public health, the public morals

and public safety, as the one or the other may be affected by the exercise of the franchise by the grantee." *New Orleans Gas Co.* v. *Louisiana Light Co.*, 115 U. S. 650; Beach Pub. Corp., sections 713, 990, 1229 and 1230.

In the case of *City of Indianapolis* v. *Indianapolis Gas Light and Coke Co.*, *supra*, it was contended upon the part of the city, that the contract in controversy was a restriction upon the legislative power to regulate the lighting of the streets.

But this court, in that case, drew the distinction between legislative and contractual powers of municipal bodies, as follows: "These two powers need not be confounded. The exercise of the legislative power requires the consent of no person except those who legislate; while it is impossible to make a contract without the consent of another or others. We think, therefore, that, when the city of Indianapolis made the contract in question with the gaslight company it made it in the exercise of its power to contract, and not in the exercise of its power to legislate, although the power to make the contract was authorized by an ordinance; and, having the power to make a contract touching the subject-matter, it had the right to make it according to its own discretion as to its prudence or good policy, within the limits of its franchise. Nor can we see that the contract in the least restricts the legislative powers of the city, except that, as the sanctity of the contract is shielded by the constitution of the United States, it can not, in the exercise of its legislative power, impair its validity; for it would be a solecism to hold that a municipal corporation can impair the validity of a contract, when the State which created the corporation, by its most solemn acts, has no such power."

See, also, *Ohio Life Ins. Co.* v. *Debolt*, 16 How. 415.

The appellant cites *Stone* v. *Mississippi*, 101 U. S. 814, in

support of its contention that the grant to appellee to use the streets was the exercise of its police power, but this case decides only that the abolition of a *lottery* was clearly within this power, as lotteries are contrary to public morals. The case has no bearing upon the rule which the appellant insists ought to be applied in the case now before us.

Chief Justice Waite, in this case, speaking for the court, on p. 818, said: "Many attempts have been made in this court and elsewhere to define the police power, but never with entire success. It is always easier to determine whether a particular case comes within the general scope of the power, than to give an abstract definition of the power itself which will be in all respects accurate. No one, however, denies that it extends to all matters affecting the public health or the public morals."

This, we think, enunciates the true rule. We can not agree and hold with the appellant that the second ordinance upon which this prosecution is based should be regarded as an exercise of the police power under discussion so as to bind the appellee under the facts alleged in its answer, and thereby compel it to comply with its terms and conditions in the exercise of the rights granted to it by the first ordinance. The ordinance in question is "imperative and sweeping," and for no purpose can a cut be made in the pavements mentioned therein without the consent of the board of aldermen and council first obtained, and the filing of the bond. No one is excepted from its provisions.

We judicially know that by reason of changes occurring from extreme heat, cold and pressure, leaks will and do occur in gas pipes, which require immediate repair. If then it should be held that in making these repairs—wherein it would be necessary to uncover the

The City of Indianapolis *v.* Consumers Gas Trust Company.

mains—the appellee must await the pleasure of the council and board of aldermen in giving its consent, it would be virtually in the same condition as though it had not secured the rights and franchise under the ordinance of 1887.

Penal ordinances, like penal statutes, are not always, nor ought they to be, construed literally, and courts will make the necessary exception.   *Donnell* v. *State*, 2 Ind. 658; *Nixon* v. *State*, 76 Ind. 524.

We are constrained to hold that the ordinance of 1890 is inoperative and void so far as it may be invoked to abridge or restrict appellee in the exercise of the rights and privileges acquired by it under the ordinance of 1887.

In consonance with reason, it can not be held that the appellee which had already obtained the consent of the city by virtue of the ordinance last mentioned must be required to secure a new consent.   The right on the part of the appellant to consent implies the right to refuse; therefore, it could by refusing consent effect a complete prohibition.   This evidently is not the intent or spirit of the ordinance of 1890.

The case of *Lewisville Natural Gas Co.* v. *State, ex rel.*, 135 Ind. 49, favors and supports the conclusion reached by the court in this case.

We have examined the cases cited by the appellant, but they do not sustain their contention, and we do not deem it necessary to refer to them all in this opinion in detail.   We, therefore, adjudge that the ordinance of 1890, as against appellee, in view of the facts set forth in its answer, is inoperative and so far void, and that the court did not err in overruling the demurrer.

Judgment affirmed, at the cost of appellant.

All concur.

Filed Jan. 16, 1895.