Westfield Gas and Milling Co. *v.* Mendenhall *et al.*

No. 17,489.

WESTFIELD GAS AND MILLING CO. *v.* MENDENHALL ET AL.

INJUNCTION.—*Gas Company.*—*Use of Streets for Pipes.*—*Ordinance.* —*Maximum Price of Gas.*—A gas company which uses the streets of a town for laying its pipes under general permission therefor contained in an ordinance under section 4306, R. S. 1894, limiting the price to consumers to a certain maximum, will be enjoined from charging a consumer more than such maximum.

From the Hamilton Circuit Court.

*T. J. Kane* and *R. K. Kane,* for appellant.

*L. S. Baldwin* and *J. F. Neal,* for appellees.

JORDAN, J.—Appellees by their action sought to enjoin the appellant from carrying out its purpose to deprive them of the use of natural gas from the plant of the appellant, upon the ground that the former had refused to pay a price therefor in excess of the maximum rate fixed by an ordinance of the board of trustees of the town of Westfield, Indiana, under which ordinance appellant exercised the right to use the streets of said town in the construction and operation of its natural gas plant. Appellant unsuccessfully demurred to the complaint, and upon its refusal to further plead, a judgment was rendered awarding the relief asked by appellees.

The only question presented by this appeal is as to the alleged error of the court in overruling the demurrer to the complaint. The following, we believe, is a correct resume of the material facts as they are alleged in the complaint:

"1. That the appellees are citizens of the town of Westfield, in Hamilton county, Indiana, and patrons

and consumers of appellant's Gas Company, and consumers of natural gas furnished by said appellant in said town.

"2.  That defendant is a corporation duly organized and operating under the laws of said State, and having its office and principal place of business at said town, and was organized for the purpose of owning, controlling and operating gas wells, and also a gas plant in said town, to supply natural gas for light and fuel to residents and citizens of said town, and is now engaged in said business, and has been so engaged since, and pursuant to an ordinance passed by the board of trustees of said town, etc.

"3.  That said town of Westfield is a municipal corporation, duly organized and existing under the laws of the State of Indiana.

"4.  That on the 4th day of January, 1889, the board of trustees of said town duly and legally passed an ordinance regulating the supply of natural gas to the citizens of said town.

"5.  That said ordinance was duly published in the *Westfield News,* a newspaper printed and published in said town, on the 11th day of January, 1889, and became of effect on the 2nd day of January of said year; that a copy of said ordinance is filed herewith, and marked 'Exhibit A.'

"6.  That among other things said ordinance fixed and established a maximum schedule that should be charged to consumers for the supply of said gas, which schedule and the prices authorized to be charged for kitchen and cook stove are as follows, to-wit:  Eighty cents per month for twelve months; $9.60 per year.

"7.  That said ordinance further provided that before any corporation, firm, individual or company desiring to pipe the town of Westfield, Indiana, for the supply

of natural gas, shall do any work toward the laying of any mains or pipes in any street, alley or public grounds thereof, such individual, corporation or firm, as the case may be, shall, if the board of trustees so elect, execute a bond to the town of Westfield, Indiana, in the penal sum of $3,000.00 to the acceptance of, and the approval of said board, in which one or more of the sureties shall reside in Hamilton county, Indiana; that afterwards, on the 4th day of February, 1889, the defendant, desiring to occupy said streets and alleys with its pipes did, at the request of said trustees, file its written acceptance of said ordinance and bond, as in said ordinance required, which said bond and acceptance the board of trustees approved.

"8. That said board of trustees approved and accepted said bond, and that said defendant laid its pipes and mains in the streets and alleys of said town, all of which was done subject to the filing and acceptance of said bond, and in pursuance of said ordinance.

"9. That it was further agreed between said company, and between said board of trustees before the filing and acceptance of said bond, that in consideration of said town waiving its rights by law to require defendant to pay a license fee for the privilege of occupying and using said streets, alleys and grounds aforesaid, and operating said plant therein, said defendant would furnish said gas to consumers in said town in accordance with the schedule of rates and prices fixed by said ordinance.

"10. That on the 20th day of April, 1894, defendant published in the *Westfield News*, notice to gas consumers, as follows, to-wit:

"NOTICE TO GAS CONSUMERS.

"Notice is hereby given that all persons using gas

from the Westfield Gas and Milling Company, whose five year contract expires on or before May 1, 1894, will be charged on and after that date, $1 per month per cook stove, instead of 80 cents as heretofore.

W. B. HILL, *Secretary.*    A. L. BINFORD, *President.*

"11.    That the defendant has been giving out in speeches that he intends to raise the rates for the use of gas in kitchen and cook stoves, and that the stoves referred to by defendant are kitchen stoves on which the contract has expired or is about to expire, all of which would be in violation of said ordinance.

"12.    That plaintiffs have, since the adoption of said ordinance and the execution and approval of said bond, fitted up and plumbed their respective dwelling houses and kitchen and cook stoves at great expense to them for the use of said gas, by which said stoves have been rendered unfit for any other kind of fuel; that plaintiffs desire to continue the use of said gas for their kitchen stoves, and have always been ready and willing to pay said rate as fixed by said schedule, but defendant refuses to accept said rate, and threatens to exact from said plaintiffs and other consumers, the sum of one dollar per month for each kitchen or cook stove, in violation of said ordinance, and will do so unless restrained by the order of this court.    *   *   *    A copy of the ordinance is filed with the complaint, and marked 'Exhibit A.'"

There are other averments in the pleading, but it is not necessary to set them out, as the foregoing sufficiently present the particular point herein involved.

The ordinance in question was made a part of the complaint, and treated by the parties as an exhibit.

Sections one and six are substantially as follows:

By section one, the privilege or right is granted to any

corporation, company, firm, etc., having its principal office in the town of Westfield, to lay and extend its gas pipes and mains upon and through the streets and public grounds of that town for the purpose of supplying it and its inhabitants with natural gas, under, and subject to the restrictions named in the ordinance.

Section six provides that before any corporation or company, etc., shall lay any pipes or mains in the streets of the town, it shall execute a bond to the approval of the board of trustees, * * * and that any such company or corporation, etc., shall furnish gas to consumers under such rules and regulations as it shall adopt, at and for not exceeding the schedule of prices following, to-wit: Kitchen stoves, 80 cents per month, or $9.60 per year. The schedule continues, fixing the maximum price to be charged consumers for the use of gas in heaters and grates, etc.

The contention of appellant is, that the town of Westfield had no power, by ordinance, to regulate the price of natural gas to consumers in this manner, and that appellant is not bound by the terms and conditions of this ordinance. While, upon the other hand, appellees deny this contention, and contend that the town had the power, under the law, to adopt this ordinance with these restrictions, and as appellant acquired its rights thereunder to the use of the streets of the town, by expressly accepting the same, and executing its bond as provided, it became bound by its terms and conditions; that the provision or stipulation to furnish gas to the consumers of the town at a price not to exceed that fixed in the ordinance, when agreed to by the appellant was in the nature of a contract between it and the town which inured to the benefit of any citizen thereof, who desired to obtain gas from the appellant, and that the same may be enforced by appellees.

By an act of the Legislature, approved March 7, 1887 (Acts 1887, page 36), section 4303, R. S. 1894, incorporated towns and cities are empowered to enact a general ordinance to reasonably regulate the supply, distribution and consumption of natural gas within their respective corporate limits, and to require a fee of the persons or companies for the use of the streets granted to them by these municipalities.

It was held, in effect, by this court, in the appeal of *Citizens' Gas and Mining Co.* v. *Town of Elwood,* 114 Ind. 332, that such a general ordinance must allow all companies, corporations or persons to use the streets as near as practicable on equal terms and conditions; that the statute of 1887, at least impliedly, forbids the grant of special privileges by special contract or license to any one company, corporation or person to the exclusion of others.

The board of trustees of the town of Westfield seems to have been exercising the power lodged in it by the statute cited, and by the adoption of the ordinance in controversy extended to all persons similarly situated, upon equal terms and conditions, the benefit of the franchise thereby granted.

The town had the right in granting the use of its streets, to impose such reasonable requirements, terms, regulations and conditions therein, upon those accepting the privileges and benefits of the grant, as its own prudence and discretion might dictate, so as not to restrict, however, the town in its legitimate exercise of legislative powers. The authority to prescribe such terms and conditions, if not expressly conferred by the act of 1887, may at least be reasonably inferred therefrom, in order that the full force and effect may be given to the power expressly granted. *City of Crawfordsville* v. *Braden,* 130 Ind. 149 (14 L. R. A. 268); *City of Indianapolis*

v. *Consumers' Gas Trust Co.*, 140 Ind. 107 (27 L. R. A. 514), and authorities there cited.

There was no compulsion upon the appellant to accept the rights upon the terms and conditions imposed under the ordinance; it did so, however, voluntarily and unreservedly. By executing the bond in question, and the written acceptance of the franchise, there was a clear manifestation of consent upon appellant's part, to accept the rights granted upon the terms and conditions proposed by the ordinance, and to be bound thereby. Having accepted the franchise granted by the ordinance, and agreed to be bound by the express terms as to the price of gas, and having engaged in the exercise of the privileges under the grant, and so continuing to do, it is now precluded from successfully refusing to discharge its obligations to the inhabitants of the town, who desire to use its fuel upon the ground that they refuse to pay a price therefor in excess of the maximum rate fixed by the ordinance. The town could not, by its subsequent action, impair or restrict the rights granted to, accepted, and exercised by appellant. Neither will the latter be permitted, under the circumstances, to decline to comply with the terms or conditions assumed by which it is expressly obligated. *City of Indianapolis* v. *Consumers' Gas Trust Co., supra.*

In the case cited the character, effect and rights acquired under a similar ordinance passed by the city of Indianapolis were considered, and that decision and the authorities therein cited support the conclusion reached in the present appeal. In the case at bar the fact also appears, that in consideration of the town waiving its right to exact the license fee, the appellant agreed to furnish gas to consumers in accordance with the prices fixed in the schedule.

The business of manufacturing and distributing gas

for fuel and illuminating purposes, by means of pipe laid in the streets of a town or city, is a business of a public character ; it is the exercise of a franchise belonging to the State, which has been granted to an individual or corporation, under legislative authority through the action of such municipalities ; the services rendered, and to be rendered for such a grant are of a public nature, and the grantee owes a duty to the public. *People, ex rel.,* v. *Chicago Gas Trust Co.,* 130 Ill. 268 (8 L. R. A. 497), and authorities cited.

The privileges and rights to the streets of the town of Westfield were awarded to appellant, and it was, as it appears, exempted from the payment of a fee which the town, under the statute, was expressly authorized to exact for the grant in question. As a consideration for all this, appellant agreed to furnish gas to the inhabitants of the town at a price not to exceed the maximum rate fixed. This obligation it assumed, and bound itself to discharge, and this obligation the law will enforce, and appellant cannot successfully be heard in a court of justice to contend that it, under the circumstances, is of no binding force. Its learned counsel cite the case of *Lewisville, etc., Gas Co.* v. *State, ex rel., etc.,* 135 Ind. 49 (21 L. R. A. 734), and insist that this case is conclusive upon the questions herein involved. In this contention, however, they are clearly mistaken. In that case, as it appeared, the appellant, for some time prior to the adoption of the ordinance in controversy, had been engaged in furnishing natural gas to the citizens under a former grant to it by the trustees of that town. By a subsequent ordinance the board of trustees fixed a maximum rate to be charged in the future to consumers. The gas company did not accept any rights under this subsequent ordinance or agree to be bound by the prices therein fixed. This case is clearly distinguishable from the one now under

consideration. It does not appear that the ordinance now in controversy impaired or changed any prior existing rights and privileges held or enjoyed by appellant herein.

There is no apparent error in the action of the court in overruling the demurrer to the complaint, and the judgment is therefore affirmed.

Filed November 19, 1895.