## WINFIELD ET AL. v. PUBLIC SERVICE COMMISSION.

[No. 23,058.   Filed January 11, 1911.]   ʼ9ʼᵀ·

1. CONSTITUTIONAL LAW.—*Franchises.—Contracts.—Obligations.*—Where only the rights and interests of the city and a public utility are being considered, their franchise contracts granting to the latter the right to use the city streets are, generally speaking, valid, binding and mutually enforceable; ʼand, unless required by public welfare, the legislature has no power to impair the obligations thereof.   p. 53.

2. MUNICIPAL CORPORATIONS.—*Streets.—Rights of State.—Franchises.*—Since the streets and other highways of municipalities are a part of the general highways of the state, a municipality in granting a franchise for the use of its streets to a public utility, in so far as the public welfare is affected, acts as the agent of the state; and the municipality, to the extent that the interests involved are not purely local, has only such authority over its streets as is delegated by the state and not waived, the limitations of which authority are known to all, as they are reservations by virtue of the police power of the state.   p. 59.

3. CORPORATIONS.—*Police Power.—Grant.*—The element of government known as the police power, which the state may exercise for the general welfare and protection of its citizens, as it applies to the regulation and control of public utilities, may be abandoned by the state to such utilities by granting directly to them in charters, or by franchises, freedom from the exercise thereof; but such grant of freedom is in derogation of common right, is never presumed, and if doubt exists as to the abandon-

ment of the power it must be resolved in favor of the state.
pp. 60, 72.

4. MUNICIPAL CORPORATIONS.—*Franchises.* — *Presumption.*—The
state may authorize municipalities to grant a franchise to a
public service corporation free from the exercise of the state's
power of regulation; but such franchises are never construed
as being free of such power, unless the state's grant of author-
ity and the municipality's grant in the franchise are clear and
positive.   p. 61.

5. MUNICIPAL CORPORATIONS.—*Franchises.—Ratification.*—A state
may ratify a franchise granted by a municipality exempting
the grantee from the exercise of the state's power of regula-
tion, though the municipality had no power to so exempt at the
time of granting the franchise.   p. 61.

6. CORPORATIONS.—*Police Power.—Regulation.*—The state may,
for the public good, regulate the acts and conduct of public
service companies, except where it has irrevocably divested it-
self of the right to exercise its police power in their regulation;
this rule applies to their charges for service, the underlying
principle of which is that such charges shall be fair and rea-
sonable.   p. 61.

7. CONSTITUTIONAL LAW. — *Impairment of Contracts.* — *What
Amounts to.*—Unless the state—by charter or in the authority
to a municipality as its agent or by ratification—has divested
itself of the power to regulate public utilities, the power is by
implication written into the franchise contract; hence the action
of the state in regulating them is not an impairment of the
contract, but an exercise of a right provided in the contract.
p. 62.

8. MUNICIPAL CORPORATIONS.—*Franchises.—Authority.*—The act
of 1867 as amended in 1891 (Acts 1891 p. 122, §3623 Burns
1894), giving the common council of a city exclusive power over
the city streets, etc., for certain purposes, is broad enough to
authorize a city to make a valid contract for user of its streets,
as between it and the company; but the act does not authorize
the city to bar or curtail the right of the state to exercise its
police power to regulate, the word "exclusive" being used to
define the agency and not to bar the state from exercising
reserved authority.   p. 63.

9. MUNICIPAL CORPORATIONS.—*Franchise.—Authority to Grant.*
—Although §§93, 253, Acts 1905 p. 219, §§8696, 8938 Burns
1914, empower a city to authorize telephone companies to use
its streets, alleys or public places; to contract for public service
for the convenience and welfare of the people; to provide by
ordinance all necessary regulations for the placing of telephone
poles, etc.; and to impose the payment of "reasonable license

fees or other compensation" to the city for the franchise rights, these provisions cannot be construed as allowing the city to grant franchises to public service companies that would prevent the state from the exercise of its police power in the regulation of such companies. p. 64.

10. MUNICIPAL CORPORATIONS.—*Franchises.—Authority.*—Where a city had granted the use of its streets to a telephone company under a franchise, defective in no respects except that the city had power to provide for only reasonable fees or compensation, the provisions in §8938 Burns 1914 (§253, Acts 1905 p. 219)— declaring "that where any city has heretofore granted a franchise to any * * * corporation to use its streets * * * such franchises are hereby in all respects legalized or made valid and shall be as valid as if granted under the provisions of this act"—did not make the franchise between the city and the company more binding or effective than one granted under the act, nor ratify as reasonable the particular terms specified therein. p. 66.

11. MUNICIPAL CORPORATIONS.—*Franchises.—Statutes Granting Authority.*—Statutes which grant, or give to cities the power to grant, franchises are strictly construed. p. 67.

12. TELEGRAPHS AND TELEPHONES.—*Authority of State.—Discrimination.*—Discrimination by a public service company is contrary to public interest; and the provision in a franchise contract, between a city and a telephone company, that the city should have free service, in so far as it necessitated a greater charge to other patrons to make up the needed revenue, was a matter of public interest and the state had the power to modify or to declare void such provision. pp. 67, 70.

13. TELEGRAPHS AND TELEPHONES.—*Franchises.—Construction.* —Where a franchise contract between a city and a telephone company was granted under an ordinance declaring the granting and the enjoyment of it to be subject to "all laws passed or which may be passed by the legislature for the regulation or control" of such companies, the state had express supervisory power under the franchise. p. 67.

14. CONSTITUTIONAL LAW. — *Class Legislation.* — The state may regulate public service companies by direct legislation, but such legislation must apply alike to all companies of a class. p. 68.

15. CONSTITUTIONAL LAW.—*Separation of Power.—Public Service Commission.—Invasion of Judiciary.*—The act creating the Public Service Commission and giving it power to use methods similar to those of a judicial tribunal in eliciting facts and making orders concerning applications of public service companies is not an invasion of the judiciary. p. 69.

16. CONSTITUTIONAL LAW.—*Charges.* — *Due Process.* — *Administrative Proceedings.*—Where a telephone company had surrendered a franchise granted to it by a city and was operating under an intermediate permit from the Public Service Commission, an order by the commission raising the rates higher than provided for in the franchise, in a proceeding brought by the company in which the city was notified and appeared as a party, was not objectionable as being without due process, since the state, through the commission, had power to fix rates under the police power, and the act in so doing was not that of the company but that of the state after a hearing. p. 69.

17. TELEGRAPHS AND TELEPHONES. — *Power of Public Service Commission.*—*Statute.*—The restriction in §7 of the act creating the Public Service Commission (Acts 1913 p. 167, §10052g Burns 1914)—which declares, in reference to rates, that the charge made shall be reasonable and just, but that a public utility, during the remainder of the term of any franchise under which it may be acting, shall not charge for any service in excess of the maximum rate fixed—is a restriction on the public utility and not on the commission; and the commission had the right under the police power of the state to authorize a telephone company that had surrendered its franchise and was acting under an intermediate permit to charge a higher rate than that fixed in the franchise. p. 71.

From Cass Circuit Court; *Henry H. Vinton,* Special Judge.

Suit by Maurice Winfield and others against the Public Service Commission and the Logansport Home Telephone Company. From a judgment for defendants, plaintiffs appeal. *Affirmed.*

*George A. Gamble, D. D. Fickle* and *D. C. Arthur,* for appellants.

*Evan B. Stotsenburg,* Attorney-General, *Burt L. New, Rabb, Mahoney & Fansler,* and *Long, Yarlott & Souder,* for appellees.

*Ferdinand Winter* and *J. A. VanOsdol, amici curae.*

HARVEY, J.—The complaint in this case alleges that in 1901 the city of Logansport granted to the Logansport Home Telephone Company a "franchise, license and

permit" to construct and operate a telephone exchange and system of wires, poles, and so forth, in said city, and over and through the highways thereof; that the term of said franchise was forty years; that the franchise fixed maximum rates to be charged for telephone service, providing that under certain circumstances the city might reduce said rates, "but in no event shall the city of Logansport, or said" grantees or their assigns "increase the rates * * * above the rate set out" in the franchise. That in further consideration of the rates, ·franchises and privileges herein granted, the said "grantees, their successors and assigns agree to furnish the city for office use one telephone each for" specific offices and departments, aggregating twenty-one, "free of rental"; that grantees accepted said franchise, and said Home telephone company, the assignee, has constructed and maintained in operation since 1901 the exchange and system contemplated, and has furnished service at the rates named, and free to the city, and was so doing at the time of the creation by the general assembly of the state, in March, 1913, of the Public Service Commission. That to "avoid its said contract with said city," said telephone company "pretended to surrender its said franchise * * * to the Public Service Commission" and "accepted from said Public Service Commission what is denominated in said act as an indeterminate permit." That thereafter said company applied to said commission for an increase of rates; that on a hearing had before said commission, the commission made an order increasing said rates beyond the maximum rates fixed in said franchise; and that under said order the city was deprived of free telephones. Appellant alleges that he is a patron of said company, and a resident taxpayer of said city; that he sues on behalf of himself and other taxpayers who may

join in the action; that said assignee company is a corporation organized in the year 1901, under the laws of Indiana; that said company now claims to operate its said exchange and system under said indeterminate permit; that said acts and conduct of said company are in violation of the Constitution of the United States, prohibiting the state from impairing the obligations of contracts, and of the Constitution of Indiana, which denies the general assembly power to pass laws having such effect; that the order of said commission violates §7 of the act creating the commission. The Public Service Commission and said company are made defendants. That said city, on the demand of plaintiff, refused to prosecute this action. Plaintiff prays that said order of said commission increasing said rates be declared void, and the commission "enjoined from granting any rates exceeding" said maximum rates. Ten other citizens petitioned, and were permitted, to join as plaintiffs.

The court sustained the separate demurrer of each defendant to the complaint, and rendered judgment against the plaintiffs. The errors alleged and assigned are the sustaining of said demurrers and the rendition of said judgment.

The claim of plaintiffs that in 1901, and prior thereto, the city of Logansport, under statutes of the state, had exclusive power over its streets and highways, 1. and the right to make the contract alleged; and that said contract was binding on said telephone company and said city may, with some reservations, be conceded. Generally speaking, such contracts, when only the rights and interests of the city and ultility are being considered, are valid, binding, and mutually enforceable; and unless the public welfare, in the judgment of the state, requires, the legislature cannot impair the obligations thereof. *Lewisville Nat. Gas Co.*

v. *State, ex rel.* (1893), 135 Ind. 49, 34 N. E. 702, 21
L. R. A. 734; *City of Indianapolis* v. *Consumers, etc.,
Co.* (1895), 140 Ind. 107, 116, 39 N. E. 433, 27 L. R. A.
514, 49 Am. St. 183; *City of Rushville* v. *Rushville Nat.
Gas Co.* (1904), 164 Ind. 163, 73 N. E. 87, 3 Ann Cas.
86; *Westfield, etc., Co.* v. *Mendenhall* (1895), 142 Ind.
538, 41 N. E. 1033; *City of Noblesville* v. *Noblesville
Gas, etc., Co.* (1901), 157 Ind. 162, 60 N. E. 1032;
*Muncie Nat. Gas Co.* v. *City of Muncie* (1902), 160
Ind. 97, 101, 66 N. E. 436, 60 L. R. A. 822; *Milwaukee
Elec. R., etc., Co.* v. *Railroad Com.* (1914), 238 U. S.
174, 35 Sup. Ct. 820, 59 L. Ed. 1254.

There are decisions of this court strongly support-
ing the right of cities in matters of local self-govern-
ment. *State, ex rel.* v. *Denny* (1889), 118 Ind. 382, 21
N. E. 252, 4 L. R. A. 79; *State, ex rel.* v. *Denny* (1889),
118 Ind. 449, 21 N. E. 274, 4 L. R. A. 65; *City of Evans-
ville* v. *State, ex rel.* (1889), 118 Ind. 426, 21 N. E. 267,
4 L. R. A. 93; *State, ex rel.* v. *Fox* (1901), 158 Ind. 126,
63 N. E. 19, 56 L. R. A. 893. Such decisions do not
apply, however, when the interest of the public gener-
ally is involved, as it is in general telephone service.

The streets and other highways of the city are, how-
ever, a part of the other and general highways of the
state and, as such and to the extent that the in-

2.   terests involved are not purely local to cities and
incorporated towns, such power as a municipality
has over them is granted to the municipality by the
state, and may be modified or withdrawn by the state
from the municipality, unless the state has waived its
right to do so. Therefore, the municipality, so far as
affects the public welfare, acts, in granting franchises
to public service corporations, as the agent of the state,
and cannot bind the state beyond the authority dele-
gated by the state to the municipality in that respect.
The existence of limitations of authority in the agent is

known to all, because they are reservations by virtue of the state's police power. *Board, etc.* v. *Lucas* (1876), 93 U. S. 108, 23 L. Ed. 822; *Home Telephone Co.* v. *Los Angeles* (1908), 211 U. S. 265, 29 Sup. Ct. 50, 53 L. Ed. 176; *Stanislaus Co.* v. *San Joaquin, etc., Co.* (1903), 192 U. S. 201, 24 Sup. Ct. 241, 48 L. Ed. 406; *Milwaukee Elec. R., etc., Co.* v. *Railroad Com., supra; City of Benwood* v. *Public Service Commission* (1914), 75 W. Va. 127, 83 S. E. 295, L. R. A. 1915C 261; *City of Owensboro* v. *Cumberland Telephone Co.* (1912), 230 U. S. 58, 33 Sup. Ct. 988, 57 L. Ed. 1389.

The state's power of control of such matters is one of the elements of the state government, in the exercise of which the people are represented by the legislature. This element of government is commonly called the state's police power, and in the present case applies to the general interest of the citizens of the state in proper public service. The state may deprive itself of the power to exercise this power by granting directly to the public service companies in charters, or by franchises, freedom from the exercise thereof; but, inasmuch as such grant of freedom is in derogation of common right, it is never presumed to have been made by the state, and the state will not be held to have abandoned the right to exercise its police power, unless the state's intention so to do is expressed in terms so clear and unequivocal as to exclude doubt; and if doubt exists it must be resolved in favor of the state. *City of Indianapolis* v. *Navin* (1898), 151 Ind. 139, 47 N. E. 525, 51 N. E. 80, 41 L. R. A. 337; *Milwaukee Elec. R., etc., Co.* v. *Railroad Commission, supra; Home Telephone Co.* v. *Los Angeles, supra; Covington, etc., Turnpike Co.* v. *Sandford* (1896), 164 U. S. 578, 587, 17 Sup. Ct. 198, 41 L. Ed. 560; *Addyston Pipe, etc., Co.* v. *United States* (1899), 175 U. S. 211, 20 Sup. Ct. 96, 44 L. Ed. 136; *Providence Bank* v. *Billings* (1830), 4 Pet.

514, 561, 7 L. Ed. 939; *Charles River Bridge* v. *Warren Bridge* (1837), 11 Pet. 420, 547, 9 L. Ed. 773; *Stone* v *Farmers' Loan, etc., Co.* (1885), 116 U. S. 307, 347, 6 Sup. Ct. 334, 388, 1191, 29 L. Ed. 636; *Stanislaus* v. *San Joaquin, etc., Co., supra; Freeport Water Co.* v. *Freeport* (1900), 180 U. S. 587, 21 Sup. Ct. 493, 45 L. Ed. 679; *Woodburn* v. *Public Service Commission* (1916), 82 Ore. 114, 161 Pac. 391, L. R. A. 1917C 98.

The state may also authorize municipalities to grant, in a franchise to a public service corporation, freedom from the exercise of the state's power of regulation; but such franchises are never construed to have this effect, unless the state's grant of authority to the municipality, and the municipality's grant in the franchise are expressed in terms positive and clear, as above indicated. *Home Telephone Co.* v. *Los Angeles, supra; Milwaukee Elec. R., etc., Co.* v. *Railroad Commission, supra.* In the decisions last cited the court distinguished several cases, wherein it was held that the state had itself authorized the municipality to fix unalterably rates, which distinguished cases are relied on herein by appellants.

A state may ratify a franchise containing such an exemption made by a municipality, though the municipality had no power to so exempt at the time of granting the franchise, but the questions then are: (1) What was the contract, or franchise, which was so ratified; and (2) if the contract contains an exemption, did the state ratify the exemption?

Except where the state has thus irrevocably, either directly or indirectly, divested itself of the right to so exercise its police power, the state may, for the public good, regulate the acts and conduct of the public service companies, and the most frequent call for such regulation relates to charges of such companies for their public service; the principle underly-

ing such regulation being that the charges for service shall be fair and reasonable, all things considered, and that the rate fixed shall not be so low as to deprive the company of means of adequate service, nor so high as to unduly burden the public.

Every charter granted by the state, and every franchise, whether granted by the state directly or by the municipality acting as agent of the state, is 7. granted in view of the rules above stated, and especially in contemplation of the fact that unless the state has in the charter to the utility company, or in the authority to its agent, or by ratification, abandoned its power to so regulate, the state's power is by implication written into such contract; and therefore the state's act of regulation, within the limits above stated, is not an impairment of the contract, but rather an exercise of a right provided in the contract. *Grand Trunk, etc., R. Co.* v. *City of South Bend* (1909), 174 Ind. 203, 89 N. E. 885, 91 N. E. 809, 36 L. R. A. (N. S.) 850; *Mannigault* v. *Springs* (1905), 199 U. S. 473, 26 Sup. Ct. 127, 50 L. Ed. 274; *Raymond Lumber Co.* v. *Raymond Light, etc., Co.* (1916), 92 Wash. 330, 159 Pac. 133, L. R. A. 1917C 574; *Manitowoc* v. *Manitowoc, etc., Traction Co.* (1911), 145 Wis. 13, 129 N. W. 925, 140 Am. St. 1056; *City of Benwood* v. *Public Service Commission, supra; Minneapolis, etc., R. Co.* v. *Menasha, etc., Co.* (1914), 159 Wis. 130, 150 N. W. 411, L. R. A. 1915F 732; *Union Dry Goods Co.* v. *Georgia Public Service Corporation* (1914), 142 Ga. 841, 83 S. E. 946, L. R. A. 1916E 358; *City of Dawson* v. *Dawson Telephone Co.* (1911), 137 Ga. 62, 72 S. E. 508; *Cortelyou* v. *Anderson* (1906), 73 N. J. Law 427, 63 Atl. 1095.

A decision as to the sufficiency of the complaint herein, which complaint seeks, in effect, to enjoin the state, depends upon the terms of the charter granted by the state to the Logansport Home Telephone Com-

pany, and upon the character of power granted by the state to the city of Logansport, and upon the character of the contract made with said city by the defendant telephone company. It is not claimed by appellants that any provision of the charter of the company prevents the state from regulating the company's affairs. It is claimed that the state granted to the city power to make a contract which bars the state from exercising its power to regulate the rates of the company. Appellants claim that the city of Logansport was empowered to so bind the state by the act of 1867, as amended in 1891, and in force in 1901, when the franchise here in question was granted. Acts 1891 p. 122, §3623 Burns 1894. Said act provides that the common council shall have exclusive power over the streets, highways, alleys and bridges within said city for certain named general purposes. The act is broad enough to authorize cities to grant the right of user to public corporations. The common council is by this statute made a trustee as to matters involving the general public welfare, but there is nothing in the act which authorizes a city, or its common council, to curtail or bar the right of the state to exercise its police power above named. Such contracts are, so far as this statute is concerned, valid and binding, as between the city and the utility, but they are subject to the state's power to protect the public, reserved because not expressly waived. (*City of Indianapolis* v. *Navin, supra,* 143.) The term "exclusive" is used in the act to define the agency as exclusive, rather than to bar the agent's principal from exercising reserved authority. Therefore, appellants' claim that by this general act the city was empowered to make a contract binding the state is not sustained.

It is further claimed by appellants that the act of 1905, §§93, 253, Acts 1905 p. 219, §§8696, 8938 Burns

1914, not only empowers cities and towns to
9.   thereafter make binding contracts providing ex-
     emption from state regulation, but that said act
ratifies all former contracts of this character.

Section 8696 provides in substance that "the board of
public works shall have power:  *  *  *  (clause 11)
To authorize  *  *  *  telephone  *  *  *  compan-
ies to use any street, alley or public place in such city
and erect necessary structures therein, to prescribe the
terms and conditions of such use and to fix by contract
the price to be charged to patrons," subject to the ap-
proval of the common council.  Such general provisions
are held not to grant authority to cities to make con-
tracts binding the state to any exemption therein stated
in favor of public service companies from state regula-
tion. *Milwaukee Elec. R., etc., Co.* v. *Railroad Commis-
sion, supra; City of-Benwood* v. *Public Service Commis-
sion, supra.*

Section 8938, *supra*, provides in substance that cities
may contract for public service "for the convenience and
welfare of the people:" that the city or town may by
ordinance provide all necessary regulations and restric-
tions for the placing of poles, and so forth, and may
"whenever the public safety demands it, require the
wires to be placed underground, or that any other meas-
ures shall be taken which may be deemed for the greater
safety or better accommodation of such city or town
and its inhabitants."  So far, this section is also very
general in its terms, and the predominating thought
expressed is that the city is to provide "for the wel-
fare, safety, convenience and accommodation of the city
and its inhabitants."  Nothing in this portion of said
section can be construed as authorizing cities to un-·
alterably fix for a prolonged period any matter involv-
ing the public welfare, much less prevent the state from
changing the same,

Section 8938, *supra,* further provides in substance that in such franchises cities and towns shall also "provide for the terms which such water, * * * electricity, * * * shall be supplied to the city or town, or its inhabitants, as well as for *reasonable* license fees and other compensation to be paid to such city or town for such franchise and privilege." By the express wording of this grant to cities of power, the legislature stipulates that said fees and compensation to the city shall be reasonable. The city and the utility company are not at liberty, under this section, to contract as they please, independently of the state's supervisory powers. The power to declare what is reasonable in such matters is primarily a legislative function. *Louisville, etc., R. Co.* v. *Garrett* (1913), 231 U. S. 298, 305, 34 Sup. Ct. 48, 58 L. Ed. 229; *Stone* v. *Farmers' Loan, etc., Co., supra,* 347; *Munn* v. *Illinois* (1876), 94 U. S. 113, 24 L. Ed. 77; *Louisville, etc., R. Co.* v. *Mottley* (1910), 219 U. S. 467, 31 Sup. Ct. 265, 55 L. Ed. 297, 34 L. R. A. (N. S.) 671; *Reagan* v. *Farmers' Loan, etc., Co.* (1893), 154 U. S. 362, 14 Sup. Ct. 1047, 38 L. Ed. 1014; *Atlantic Coast R. Co.* v. *North Carolina, etc., Commission* (1906), 206 U. S. 1, 27 Sup. Ct. 585, 51 L. Ed. 933, 11 Ann. Cas. 398; *Grand Trunk, etc., R. Co.* v. *Railroad Commission* (1910), 221 U. S. 400, 31 Sup. Ct. 537, 55 L. Ed. 786. Hence the force of the provision is that such fees and compensation must be reasonable. The state gives up by this provision none of its power or right to determine what is a reasonable fee or compensation, but reserves this right and power, and by the use of the word "reasonable" restricts the power of the city. *Milwaukee Elec. R., etc.; Co.* v. *Railroad Commission, supra.*

It is further asserted by appellants that the closing proviso in §8938, *supra,* ratifies the contract here in question. The provision relied on is: "That where

any city or town has heretofore granted a franchise to any person, persons or corporation to use the streets, alleys or other public places of such city or town, such franchises are hereby in all respects legalized and made valid and shall be as effective as if granted under the provisions of this act." No defect in this franchise needing such curative legislation has been suggested, unless it be that prior thereto there was lack of power in the city to bar the state from considering and determining whether the fees and compensation to the city named therein were reasonable. However this may be, it is the claim of appellants that the state by this ratifying provision declared that the contract here in question should be binding, and that therefore the state, having directly ratified the same, cannot now revise the terms therein provided. But the provision in the ratifying clause is that when so legalized the franchise "shall be as effective as if granted under the terms of this act." A franchise granted under the terms of this act must, as we have stated, provide for reasonable fees and compensation, and such franchise granted under the terms of this act is, therefore, as to such matters, subject to the state's power. It cannot reasonably be said that franchises granted before the act of 1905 are by this curative, or legalizing, act made more binding or effective than are franchises granted under the provisions of the act. Therefore, in this curative act the state does not, as claimed by appellants, sanction as reasonable the particular terms stated and agreed upon between the city of Logansport and the defendant telephone company. But this act does leave the matter of terms in earlier franchises subject to revision by the state, if the state finds the same to be unreasonable.

Appellants claim that the section referred to should be liberally construed in favor of the power of the city.

This is not the rule. Strict construction of any

11. legislation granting authority, or franchises, is the rule when the question is whether the state has barred itself from exercising its police power. This is shown by decisions herein earlier cited.

It is claimed by appellants, in substance, that §8938, supra, to say the least, is an express recognition of the power of the city or town to contract in its own

12. interests, and that the general public is not concerned, nor its welfare involved in the question as to what, if any, compensation the city receives for the privilege or franchise granted. In so far as such contract providing for free telephone service to the city deprives the utility company of revenue needed to maintain its operating facilities, or causes the company to charge other patrons more than otherwise would be charged in order that the needed revenues may be acquired, it may be well said that the general public is interested. Furthermore, discrimination by public service corporations is obnoxious to the spirit of such legislation, and may be prevented in the public interest. Hence, the state may inquire into the effect of such contract provision, and if need be modify the same, or declare it void. We hold, therefore, that, in so far as the public interests are involved, nothing in the charter of the defendant telephone company, nothing in the powers granted to the city, and nothing in the franchise contract between the city and the defendant telephone company, prevents the state from regulating rates, including the matter of compensation to the city.

Suppose, however, we grant the claim of appellants that the city was authorized to so contract as to prevent the state from exercising its powers of regula-

13. tion; or suppose we grant the claim of appellants that the state by the act of 1905 ratified the contract which the city did make, we, nevertheless, find

that the city did not exercise its power to make such a contract, and that the state's ratification did not ratify such a contract, because we find in clause 13 of the ordinance of the city of Logansport offering this franchise, which was accepted by the defendant telephone company, and thereby became a contract, the following:

"This franchise is made and granted, and shall be enjoyed, subject to all the laws passed, or which may hereafter be passed by the legislature of the State of Indiana for the regulation and control of telephone companies."

This plainly means nothing unless it is an express stipulation by the city, agreed to by the telephone company, that the contract is subject to the state's supervisory power. This alone is sufficient to determine this action against appellants.

The remaining questions relate to methods employed by the state to accomplish such regulations. The state may do this by direct legislation. Such legislation, however, must apply alike to all companies of a class. Two utility companies doing the same class of business may, however, operate under very different circumstances—one at little expense and the other at great expense—caused by conditions over which the company has no control, and which could not be changed by management. Rates fixed by the legislature for all such companies alike would necessarily result in hardship to some. *Covington, etc., Turnpike Co.* v. *Sandford, supra*, 597. Courts are not equipped to readily investigate and adjudge such details in the first instance, even though such questions were primarily for judicial determination; but they are not. *Southern Ind. R. Co.* v. *Railroad Com.* (1908), 172 Ind. 113, 87 N. E. 966.

The confusion resulting from the methods of regulation in vogue prior to the creation of the Public Service

Commission called for a remedy, and by the commission an effort is made to supply such remedy. *LaCrosse* v. *LaCrosse Gas, etc., Co.* (1911), 145 Wis. 408, 410, 130 N. W. 530. By such a commission, in continuous session, *ex parte* exercise of power and centralization of government are avoided, all interests are heard and determined in an orderly procedure, and uniformity of treatment, in so far as differences in fact and circumstances permit, is secured. Such commissions use methods like those of a judicial tribunal to elicit facts and make orders, without invading the province of the judiciary. This right and opportunity tends to regularity of proceeding and uniformity of treatment. *Southern Ind. R. Co.* v. *Railroad Com., supra; Prentis* v. *Atlantic Coast Line Co.* (1908), 211 U. S. 210, 29 Sup. Ct. 67, 53 L. Ed. 150.

Appellants claim that it is the act of the defendant telephone company in surrendering to the state, or to the Public Service Commission, its franchise granted by the city of Logansport and the company's taking in lieu thereof an indeterminate permit, that has produced the asserted destruction of the city's rights under the franchise, and that the company should not be permitted to thus violate its contract. This suit, and the issue herein made, involve only that portion of the franchise relating to tolls and rates. Whether at all, or how far, if at all, the taking of an indeterminate permit has disturbed any other feature or element of the contract between the city and the telephone company as to matters purely local, not affecting the interests of the general public, is not here involved nor decided. Rates for service do involve the general public interest and welfare. The fact that the company took the initiative in bringing about the exercise of the state's power of regulation is not material, because the service commission has no power to grant such petition

without notice to the city and a hearing of all interested parties. Such a hearing, properly conducted, fairly and impartially considers the interests of all concerned, and the resulting judgment or order is supported by a presumption of regularity and fairness. *Pittsburgh Co.* v. *Railroad Commission* (1908), 171 Ind. 189, 86 N. E. 328. No allegation is herein made challenging the conduct of the commission; no fact is alleged tending to show that the rates fixed are excessive. The allegation is that *power* is lacking to make *any* increase thereof; the allegation is want of power in that the order made violates the obligations of the city's contract with the telephone company. The commission was authorized to hear, and the hearing was due process of law. It is not the act of the company, but the act of the state after the hearing that changes the contract rate. *Onondaga Golf, etc., Club* v. *Syracuse, etc., R. Co.* (1916), 96 Misc. Rep. 213, 160 N. Y. Supp. 693; *Armour Packing Co.* v. *United States* (1907), 209 U. S. 56, 28 Sup. Ct. 428, 52 L. E. 681; *LaCrosse* v. *LaCrosse Gas, etc., Co., supra; Calumet Service Co.* v. *City of Chilton* (1912), 148 Wis. 334, 135 N. W. 131; *McKinley Telephone Co.* v. *Cumberland Telephone Co.* (1913), 152 Wis. 359, 140 N. W. 38; *State, ex rel.* v. *Kenosha Electric Co.* (1911), 145 Wis. 337, 129 N. W. 600. Whether the city should have free service was as much involved in the question of the public welfare as whether other patrons should pay a higher rate, and the complaint alleges that 12. this was determined by the commission. A lack of revenue from twenty-one free telephones may require a higher rate from other patrons, a part of the patrons thus producing enough revenue to pay for all, and the commission, unless the contrary be shown, must be held to have considered this question, and to have determined that conditions required the city to pay. The court is not presented with a question of fact as to

what the conditions were—as to whether they justified the granting or denial of the right to charge the city for such service; but this court is presented with a question of law as to whether power exists to hear and determine, and thereupon authorize the charge against the city for service. The commission had such power.

The appellants assert that the order increasing rates violates §7 of the act creating and empowering the commission. This section is as follows: "Every public utility is required to furnish reasonably adequate service and facilities. The charge made by any public utility for any service rendered or to be rendered either directly or in connection therewith shall be reasonable and just, and every unjust or unreasonable charge for such service is prohibited and declared unlawful: *Provided,* That nothing in this act contained shall authorize any public utility during the remainder of the term of any grant or franchise under which it may be acting at the time this act takes effect to charge for any service, in such grant or franchise contracted, exceeding the maximum rate or rates therefor, if any, that may be fixed in such grant or franchise." Acts 1913 p. 167, §10052g Burns 1914. It is argued that the proviso in said section is one of limitation of power, preventing the commission from increasing rates above maximum contract rates during the contract term. In support of this argument it is said that it would be absurd to hold that the legislature had by this proviso intended to prevent utility companies from charging more than the maximum fixed by their contracts, because the contract is sufficient limitation. With this supporting statement we agree; but we cannot agree that this leads to a conclusion that the limitation is upon the commission. Utility companies cannot charge in excess of their contract rates unless the state consents. The first clause in §7, *supra,* suggests such a consent in

that it declares for the required service the charge of such companies shall be just and reasonable, and that every unjust and unreasonable charge is unlawful. This might be construed, though not with much force, as a consent of the state that such companies may charge just and reasonable rates, though in excess of contract rates, because a contract rate being unjust is unlawful.

Lest such construction might be attempted, the legislature added the proviso to §7, *supra,* as a limitation on the utility companies. The proviso was written into the law as a limitation upon the utility companies to prevent such liberal construction being made by such companies. It was not intended to thereby withhold from the commission power otherwise granted in the act to increase rates if, upon a hearing, an increase was deemed just. Such a construction would destroy, in a large measure, one of the purposes of the creation of the commission. Section 7, *supra,* is a general declaration of right of the public to "reasonably adequate service and facilities," and of the companies to "just and reasonable" compensation. A guide for all hearings and orders of the commission, and so viewed is a guaranty of protection to both, and is consistent with the section which provides for the surrender of franchises. Section 7, *supra,* excluding the proviso, makes no change. None is made until the commission acts. Section 7 does not supersede the contract. The Supreme Court of Wisconsin so held. *Manitowoc* v. *Manitowoc, etc., Traction Co., supra,* 28. In Indiana the legislature by adding the proviso so declared.

Appellants assert that this proviso should be liberally construed. If the proviso bears the construction suggested by appellant, it is in the nature of a declaration by the legislature denying

3.    the right of the state, through its agent, to exercise during the period of a franchise its police power

to regulate rates of public utilities. Such claims of exemption being "in derogation of the sovereign authority and of the common right" are "not to be extended beyond the exact and express requirements" and are construed most strictly. *Covington, etc., Turnpike Co.* v. *Sandford, supra,* 587, and cases cited.

The demurrers were properly sustained to the amended complaint. The judgment is affirmed.

Lairy, J., did not participate in the consideration and determination of this cause.

NOTE.—Reported in 118 N. E. 531. Validity of statute conferring on public service commission power to fix rates for public service corporations 14 Ann. Cas. 614; Ann. Cas. 1917C 57.