SCHURTZ *v.* CITY OF GRAND RAPIDS.

1. EVIDENCE—MUNICIPAL CORPORATIONS—RECORDS OF CITY COUNCIL BEST EVIDENCE.
    In a suit by a taxpayer to restrain a city from acquiring a public utility without an affirmative three-fifths vote of the electors voting thereon, testimony of "talk" in the common council was incompetent and cannot be considered in view of the record proceedings.

2. APPEAL AND ERROR—AFFIDAVIT VARYING RECORD NOT CONSIDERED ON APPEAL.
    An affidavit of a witness appended to defendant's brief, that testimony on a certain page of the record "should have read as follows," cannot be considered on appeal.

3. MUNICIPAL CORPORATIONS — PUBLIC UTILITY — WATERWORKS — COMPLIANCE WITH CHARTER.
    If in the settlement of a claim by a waterworks company against a city, the city attempted to acquire or purchase a public utility within the meaning of the charter language, then the terms of the charter must be complied with.

4. WORDS AND PHRASES—"UTILITY"—"PUBLIC UTILITY" — DEFINITION.
    "Utility" means the state or quality of being useful; a "public utility" is one useful to the public.

5. MUNICIPAL CORPORATIONS — WATERWORKS — ACQUIRING PUBLIC UTILITY—CONSTITUTIONAL LAW—GRAND RAPIDS CHARTER.
    An attempt by the city of Grand Rapids in the settlement of a claim against it for water furnished, to take over the property of a privately owned waterworks plant, without the same having received the affirmative vote of three-fifths of the electors voting thereon, *held*, to be a transaction involving the acquiring of a public utility within the meaning of section 25, Art. 8, Constitution of Michigan, and section 28, Art. 8, of the city charter adopted in pursuance of the "Home Rule Act" (Act No. 279, Pub. Acts 1909), and therefor void.

6. CONSTITUTIONAL LAW—CONSTRUCTION.
    The language of the Constitution should receive a strict, but reasonable, construction.

7. STATUTES—CONSTRUCTION—IMPLICATIONS.
   "That which is expressed makes that which is implied to cease."

8. MUNICIPAL CORPORATIONS—TAXPAYER'S INTEREST TO RESTRAIN ILLEGAL ACQUISITION OF PUBLIC UTILITY.
   A resident taxpayer and qualified elector of defendant city has an interest in the several funds of the city and in their integrity, and may maintain suit to restrain the city from acquiring a public utility not receiving the sanction of three-fifths of the electors voting thereon, as required by the Constitution and the city charter.[1]

Appeal from superior court of Grand Rapids; Perkins (Willis B.), J., presiding. Submitted October 10, 1919. (Docket No. 30.) Decided December 23, 1919.

Bill by Perry Schurtz against the city of Grand Rapids to enjoin the acquisition of a public utility. From a decree dismissing the bill, plaintiff appeals. Reversed, and decree entered for plaintiff.

*Shelby B. Schurtz,* for plaintiff.

*Ganson Taggart,* City Attorney (*Walter S. Palmer,* of counsel), for defendant.

STONE, J.   The bill of complaint herein was filed to restrain the defendant city from acquiring the Grand Rapids Hydraulic Company, an alleged public utility, and its property and franchises without an affirmative three-fifths vote of the electors, and from paying $30,-000 or any amount of money therefor, and to have the attempted purchase and acquisition declared void and of no force and effect. The bill is based upon constitutional, statutory, and charter provisions requiring a three-fifths vote of the electors to authorize the city to acquire any public utility.

A brief history of the organization and operation

---

[1] On right of resident taxpayer, in absence of statute to enjoin unlawful expenditures by municipality for waterworks, see note in 36 L. R. A. (N. S.) 20.

of the Grand Rapids Hydraulic Company may be helpful to an understanding of the questions involved. It was incorporated in 1849 under "an act to incorporate the Grand Rapids Hydraulic Company," approved April 2, 1849 (Act No. 223, Laws 1849), with a capital of $30,000, with power to furnish and supply water to the inhabitants of Grand Rapids, and it is alleged and we think it appears that said company, or its receivers, successors or assigns have continued to operate such utility down to the time of the hearing of this cause.

In 1889 the legislature by Local Act No. 404 authorized the township of Grand Rapids to establish and maintain a fire district within the limits of section 29 of said township, and to provide fire protection within the same. The board was given the power to rent from any water company laying its mains through any street within said fire district such a number of hydrants as might in the opinion of the board be necessary to afford fire protection for said fire district, and to increase the number of such hydrants from time to time as might by the board be deemed necessary. The expense of renting said hydrants was provided for by a tax upon all the taxable property within said fire district, to be spread upon the annual tax roll of said township. Acting under the authority so given, the township board of said township did provide a fire district constituting the west one-half of section 29, and made a contract with the Grand Rapids Hydraulic Company on June 13, 1889, to install and maintain fire hydrants, said contract to continue for a period of 30 years. The Hydraulic Company, acting under such contract, installed some 24 fire hydrants at an annual rental of $30 per hydrant. The rent thus accruing was paid up to and including 1891. In 1892 this portion of the township was annexed to the city of Grand Rapids, and the rent was not thereafter

paid, although it is claimed by defendant that claim was made from time to time for the same, and that about 17 of the hydrants were, for a number of years after such annexation, the only fire protection in that district.

The act under which the Hydraulic Company was organized contained no limitation upon the life of the corporation save this: It was provided that "the legislature may at any time hereafter amend or repeal this act." In 1905 the legislature exercised this authority, and by Acts Nos. 455 and 492 of the Local Acts of that year, repealed said Act No. 223 of the Laws of 1849. At the same time it gave to said company the right to present a claim for the value of its tangible property to the common council of the city of Grand Rapids. The constitutionality of said repealing acts was sustained by this court in the case of *People* v. *Calder,* 153 Mich. 724, and on error to the Supreme Court of the United States the decision of this court was affirmed (*Calder* v. *Michigan,* 218 U. S. 591 [31 Sup. Ct. Rep. 122]). In the opinion in this court it was said:

"The repealing act does not take from the corporation any personal or real property acquired during its legal existence. It does take from it this, and only this: Its right to continue to be a corporation. It takes from it no right, franchise or power which does not depend for its existence upon the granting clause of the charter, and these it had a legal right to take."

The right to present a claim to the common council of the city was given in the following provision of said act of 1905:

"The Grand Rapids Hydraulic Company may at any time before January 1, 1906, and not thereafter, present a claim to the common council of the city of Grand Rapids for the value of the real and tangible estate owned by it, not including franchise, at the time of

208—Mich.—33.

the approval of this act, and transfer such property to said city in consideration therefor. If the said company and the said common council shall be unable to agree upon the valuation of said property within thirty days thereafter, then such claim may be filed within the further time of thirty days, in the form of a claim in assumpsit in the superior court of Grand Rapids, and issue framed thereon in the nature of assumpsit. The rules and practice in suits in assumpsit shall be applicable thereto. Either party to such issue may take the same for review to the Supreme Court of the State, upon the questions of law raised upon the trial, or charge of the court made to a jury, if the same shall be tried before a jury. The amount finally awarded, to said company against the city of Grand Rapids shall be a claim against the city, to be paid in the same manner as other claims: *Provided,* That if the said Hydraulic Company shall not elect to present a claim against the said city and transfer its property to said city, it may, upon giving a bond with sufficient sureties to be approved by the common council, to protect the city from any damages caused thereby, remove all of its tangible property from the streets, lands, and alleys in said city, under the direction of the board of public works of said city, and in the event of any disturbance of the street or alley grades, or injury thereto, caused by said removal, it shall at the time of removal of its property therefrom cause the said streets, lands and alleys to be repaired and placed in as good condition as before."

Said Act No. 455 is in language identical with the above, from said Act No. 492, and the record states that this act is expressly reserved from repeal in the charter of 1916, hereinafter referred to.

There appears to have been filed with the city clerk, on December 30, 1905, a communication, or so-called claim, by the president and directors of the Grand Rapids Hydraulic Company. After referring to the act repealing the charter, it stated that in the year 1893, in an action in the United States court at Grand Rapids, wherein the American Loan & Trust Company was complainant, and said company was defendant, a

receiver was appointed for all the property of said company, and that said receiver had ever since been in possession of the same; that the amount of the bonds duly issued by said company was $680,000; the amount of the accrued interest thereon remaining unpaid was $244,800, making a total of $924,800; that because of the rights of the receiver and of the bondholders represented by him amounting to the said sum of money plus the expense of the receiver, estimated at $25,000, the company was unable at that time to present an exact claim for the real value of its real and tangible estate, nor its constitutional right to do business as a going concern, which the city proposed to take over to itself, and now owned by it, subject to such claims, for less than the sums above mentioned. It accordingly claimed (if said act be valid and constitutional, which it did not concede) the said sum, and it offered thereby to sell its property to the city for the sum of $949,800.

Attention was called to the contract with the township of Grand Rapids, for the furnishing of 24 fire hydrants at $30 a year for a period of 30 years from 1889,—no part of which rental had ever been paid, except the rental for the years ending March 1, 1890, and March 1, 1891, which payments were made by said township of Grand Rapids; that in the year 1892 the said western half of section 29 of said township became a part of the city of Grand Rapids; that since the year 1891 no part of said rental had ever been paid; and that on said contract there had accrued the sum of $14,542.37 principal and interest, which was then due and owing by the city to the said receiver and to the company.

This communication was referred by the council to the committee on ways and means, and the city attorney. The committee and the city attorney made a lengthy report. It referred to the repeal of the char-

ter of the company, and the privilege to present a claim to the council for the value of the real and tangible estate owned by it. Attention was called to the claim that the repealing act was unconstitutional, and the report stated that the claim was inconsistent:

"Your committee is of the opinion that this claim should not be seriously considered by the common council for the foregoing, as well as the following reasons:

"(1) It is not a claim under the act, because not made for the 'tangible' property of the company, but for bonds that never, from the best information your committee is able to obtain, had a value of more than 20 per cent. of their face, and many of which were sold for a less price than that.

"(2) Because the offer of said company is not a *bona fide* one as shown by the express determination of the company not to abide by any settlement or adjudication of the claim, unless the entire amount demanded by the company is paid.

"(3) Because the company in the offer filed, shows facts that negative any authority or power on its part to carry out any agreement or adjudication that might be had on the claim. It appears therein that all of its property is in the hands of a receiver in the United States court, where it has resided for a period of nearly 13 years. No order of such court is shown to have been made directing or authorizing the receiver to act or abide by any agreement made with the common council of the city, or adjudication had on such claim.

"(4) Your committee has been advised by the receiver of said company, and so it appears from its communication to the common council, that no interest has been paid upon said bonds since their issue, for a period of 13 years and upwards, and from such communication it also appears that the expense of administering the trust, amounting to $25,000.00 due the receiver, has not been paid. Your committee is not informed whether the company's running expenses have been paid, but know that it has been with the utmost difficulty that city taxes have been collected from said company for several years.   *   *   *

"As to the claim made by the Hydraulic Company for hydrants furnished to the township board of Grand Rapids township in the year 1889, and the contract said to have been made by the Hydraulic Company with said township board, your committee is not otherwise advised than appears in such communication. If any claim exists or is made by the Hydraulic Company for hydrants used within that portion of the township afterwards brought within the city of Grand Rapids, the claim should be made specific and presented by itself. So far as your committee is advised, no part of the same is a legal claim against the city, but it does not assume to pass upon the merits of it, in this report."

This report was adopted, and no further action seems to have been taken by the common council thereon. No action was ever taken in the superior court, as provided for in the act. There was considerable testimony of "talk" in the common council, but such testimony was incompetent, and cannot be considered, in view of the record proceedings. Neither can we consider the affidavit appended to the defendant's brief. It is alleged in the 12th paragraph of the amended bill of complaint, as follows:

"That in 1915 the Grand Rapids Hydraulic Company offered to sell to the city all its assets, in the city and outside, free and clear from all liabilities, for $80,000. That on Monday, April 3, 1916, this proposition was submitted to a vote of the electors of the city, and voted down by a vote of 'Yes, 6,506 votes, No, 10,737 votes,' and which proposition was duly declared defeated by the board of canvassers."

This allegation is by the answer admitted to be true, and the record sustains the allegation.

In the meantime the property of the Hydraulic Company had been sold under mortgage foreclosure in the Federal court to John J. Collins for $34,000, and the sale had been confirmed, and he seems to have acquired all the rights of the company to any claim it had against the city. On August 29, 1916, the voters

of Grand Rapids adopted the present city charter, under the home rule law, which charter will be later referred to. On January 16, 1919, one Fitzpatrick appeared before the city commission and announced that the Hydraulic Company was ready to make a proposition to sell the property of said company, inside the city limits, to the city, whereupon the matter was referred to the committee on public service and city manager, and that the company's proposition be submitted in writing. On March 29, 1919, at a meeting of the city commission, the mayor stated that the meeting was called for the purpose of hearing a report of the city attorney in regard to the purchase of the Hydraulic Company's property and rights, at the price of $30,000. The communication from the city attorney, among other things, stated:

"Under the charter, sections 27 and 28 of title 8, and under the home rule act, section 3307 of the Compiled Laws of 1915, as amended, a city has no right to acquire an existing public utility, except the question be passed on affirmatively by three-fifths of the qualified electors of the city, voting thereon at a regular or special municipal election.

"Whether the taking over of the property of the Hydraulic Company, which would involve the taking over a part of it for park purposes, a part of it for use in connection with the water department, and a settlement of their claim under their old contract, would be a taking over of a utility, within the intent and meaning of the charter and home rule statute, is, in my opinion, a debatable question. It is not the taking over of the utility as a going concern, although the effect would be to wipe out the hydraulic company as a competitor of the city."

Thereupon, and notwithstanding the adverse vote of April 3, 1916, of the electors, and without any attempt to submit the matter to the vote of the electors, the following resolution was adopted by the city commission:

"Resolved, that the claim of John J. Collins, or his assigns, against the city on contract for furnishing water to that part of the township of Grand Rapids now annexed to the city, acquired by said Collins under foreclosure sale in the United States district court for the western district of Michigan, be settled for the sum of thirty thousand ($30,000) dollars, conditioned that said Collins deliver to the city a deed and transfer of all the real and personal property, either within or without the city of Grand Rapids, except the Bailey Springs property, coal at pumping station and accounts receivable acquired by him on said foreclosure sale, or acquired since in connection with the use and operation of said property, free from all liens and claims of any nature, the same to be payable, five thousand dollars on delivery of deed and discharge of said claim, and the balance on or before sixty days, *conditioned* that marketable title to said property and all thereof be shown and *conditioned* that Mr. M. C. Gray shall give the city a written guarantee of title, and agreement that the money paid shall be returned to the city, in case any question of the city's right or title thereto shall arise.   And the city comptroller issue and deliver an order for five thousand ($5,000) dollars accordingly from the waterworks extension fund to Anne L. Sullivan, and the clerk and comptroller be instructed to draw an order on the city depository for the said sum of five thousand dollars ($5,000) in favor of the city treasurer."

On the same day the city comptroller issued warrant No. 7,953 for $5,000 payable to Anne L. Sullivan, out of the waterworks fund of the city, as first payment on the purchase of the Grand Rapids Hydraulic Company plant, and said warrant was delivered to M. C. Gray, who signed the name of Anne L. Sullivan in receipt thereof.   On said March 29, 1919, there was delivered to the defendant the following guarantee by Mr. Gray:

"GRAND RAPIDS, MICH., March 29, 1919.
"For, and in consideration of the sum of one dollar, the receipt of which is hereby acknowledged, and the payment by the city of Grand Rapids, Michigan, of

the sum of five thousand dollars to Anne L. Sullivan for the purchase of the property formerly owned by John J. Collins, doing business as the Hydraulic Water Company, I hereby guarantee the title of said Anne L. Sullivan to the said property, both real and personal, and that the same is free and clear from all liens and encumbrances whatsoever, and hereby agree to make the city whole, both principal, interest and costs, if any claim shall be asserted thereto, or any part thereof, and agree that any money paid to her, or to her assigns, by reason of said transaction, shall be returned to the said city, if any claim shall be made regarding the legal authority of said city to acquire said property, upon notice thereof, and offer of reconveyance of the property in question.

"M. C. GRAY. [L. S.]"

On said March 29, 1919, a warranty deed was duly executed, acknowledged and delivered by said Anne L. Sullivan to the city of Grand Rapids. After describing certain lots in the city the deed contains the following language:

"Together with all machinery, pipes, outfits, liberties, privileges, franchises and property, real or personal, excepting Bailey Springs property so-called, acquired by John J. Collins on mortgage sale, under mortgage given by the Grand Rapids Hydraulic Company, or acquired since the date of said sale by said Collins, operating as the Hydraulic Water Company, also any and all claim arising under and by virtue of a certain contract for supplying of water to lands adjacent to, and east of the city of Grand Rapids, but have since been annexed to said city, including contract regarding the same, the purpose and intent of this deed being to convey all property owned by, or used in connection with the carrying on of the business by said Collins as the Hydraulic Water Company, excepting only the Bailey Springs property so-called, and the coal now upon the said property heretofore described."

On April 1, 1919, said deed was recorded in the office of the register of deeds of Kent county, and on

the same day the original bill of complaint herein was filed.

Not only is it true that the Hydraulic Company, its receivers, successors or assigns, continued to operate this plant as a going concern—sometimes known as the Hydraulic Water Company and sometimes as the Hydraulic Company—and continued to be a competitor of the city, down to the time of the alleged sale to the city, but it appears that since said alleged purchase the property has been operated by the city as an independent plant. An officer of the city testified as follows:

"We are using the pumping station of the Hydraulic Company to supply the Hydraulic mains. Every employee they had at the time this matter came up is still in their employ, so far as I know. The matter is held in abeyance so far as the city and the Hydraulic Company are concerned, until the determination of this suit. Just as clean-cut and separate as if it was entirely by itself."

So it was not the mere attempted purchase of some pipe in the ground or "old junk," as claimed by defendant, but it was the attempted purchase of a "going plant," with its pumping station, coal and supplies, a property which had been used in active competition with the waterworks of the city.

The plaintiff relies upon the constitutional provisions, the home rule statute, and the charter provisions set forth in the bill of complaint, requiring an affirmative three-fifths vote of the electors of the city to acquire or purchase any public utility. He claims that there was here a privately owned public utility; that the transaction of March 29, 1919, was void, because the Constitution, statutes, and city charter have pointed out the method to obtain plants like the Hydraulic Company, and such method excludes all other methods; that the transaction alluded to was in reality an attempt to purchase a public utility, and that the alleged

settlement of a claim against the city was a mere pretense and subterfuge to avoid and evade the constitutional, statutory, and charter provisions relied upon.

At the expense of tediousness we think we should quote sections 27 and 28 of title 8 of the new charter. They are as follows:

"SEC. 27. The city of Grand Rapids shall have and it is hereby given the right and power to acquire, construct, own, operate and maintain either within or without its corporate limits, street railways, subways, and any and all transportation facilities, waterworks, electric light works, gas works, power works, heating works, telephone and telegraph lines, conduits, bridges, viaducts, wharfs and docks, market and market houses, garbage collection, garbage disposal and reduction plants, paving plants and appliances, and such other public utility enterprises or service as the city commission may from time to time determine and designate, and to acquire all property, real or personal, necessary or proper therefor, and to maintain and operate the same, or to lease the same or any part thereof, to other corporations or individuals for the purpose of maintenance and operation. Said city may also sell and deliver water, heat, power, light and other service of any such utility as it is now or may be hereafter authorized to do by the laws of the State.

"SEC. 28. The city shall have and it is hereby given the power and right to acquire, by purchase or condemnation, existing franchises, if any, and the property used in the operation of any and all companies or individuals now engaged in the street railway, tram railway, electric light, gas, heat, water, or power business in the city: *Provided,* that the proposition to acquire or to construct any public utility under section 27 of this title and the proposition to acquire by purchase any existing franchise and property under this section, shall have first received the affirmative vote of not less than three-fifths of the qualified electors of said city voting thereon at a regular or special municipal election, and upon such propositions women taxpayers having the qualifications of male electors shall be entitled to vote: *Provided further,* that in any such referendum the approximate purchase price

or cost of construction, as the case may be, shall be a part of the question submitted to the people, and that the city shall not pay or agree to pay therefor more than ten per cent. in excess of such approximate purchase price or cost of construction, as the case may be: *Provided further,* that the city shall in no case purchase or pay any consideration for any franchise or privilege hereafter granted, renewed, or extended, except as herein otherwise provided: *Provided further,* that the qualified electors of the city may initiate the proposition or ordinance to acquire, construct or operate any such public utility and have the same submitted to the vote of the qualified electors for their approval or disapproval in the same manner as provided in this charter for the initiation and approval of ordinances."

It is the further claim of the plaintiff that there was here an attempt by the defendant to utterly disregard not only the Constitution, statutes and city charter, but also the vote of the electors against buying the Hydraulic Company in April, 1916; and that the clause inserted in the new charter in section 28, to wit: "and the property used in the operation of any and all companies or individuals now engaged in the street railway, tram railway, electric light, gas, heat, *water,* or power *business* in the city," had special reference to the Hydraulic Company, which was the only individual property so employed in the city.

The claim of the defendant seems to be that the city was authorized in the year 1872 to establish a system of waterworks for the purpose of supplying the city with necessary water for municipal, fire and domestic purposes; that this authority was acted on, the system established, and from time to time extended so that at the present time the city has a pumping station with a capacity of some 35 million gallons per day, and a filtration plant with a capacity of from 24 to 30 million gallons per day, and approximately 180 miles of pipe; that prior to the transaction in question, the

city took over certain of the hydraulic mains so that they could supply the customers with water; that the successors of the Hydraulic Company at this time had some 14 to 17½ miles of mains, and a pumping capacity of about one million gallons daily. It had mains in various city streets where the city had no mains, and in other, and particularly the downtown paved streets, and some 450 customers where its pipes parallel those of the city; and it had also various other mains of more adequate size than the city mains, and paralleling them. It is further claimed that the money paid the successors to the Hydraulic Company was from the waterworks extension fund, in which fund at the time there was a balance of $33,805.04, raised from sale of bonds, which bonds are paid through revenue derived from the sale of the water.

It is especially urged by counsel for defendant that the act repealing the charter of the Hydraulic Company authorized, and in fact directed, the city to take over the property of the company, and to make payment therefor. We do not deem it necessary to decide this question, nor the question whether the contract with the township was a valid one and properly filed. If in the settlement of this claim the city attempted to acquire or purchase a public utility within the meaning of the charter language, then the terms of the charter must be complied with. In our opinion the action of the city commission was an attempt to acquire a public utility—a privately owned public utility. We think that the term "public utility" means every corporation, company, individual, association of persons, their trustees, lessees, or receivers, that may own, control, or manage, except for private use, any equipment, plant or generating machinery in the operation of a public business or utility. Utility means the state or quality of being useful. Was this plant one useful to the public? If so, it was a public utility. We think it was such.

Nor is it necessary for the disposition of the case, to hold that the transaction of the city commission in its attempt to get possession of the Hydraulic Company property and plant, by the settlement of the claim against the city, was a mere subterfuge or camouflage transaction. A careful reading of the proceedings which we have set out above, satisfies us that the real transaction was the attempted purchase of this plant without submitting the matter to the vote of the electors, and was void. The guarantee of Mr. Gray and the promise to pay back the entire sum paid is very significant. At best this alleged settlement was tentative and conditional on the result of a subsequent act or event, and so was not conclusive. 12 Corpus Juris, p. 341.

It is next urged by defendant that the transaction here involved was not the acquiring of a utility within either the spirit or letter of the Constitution, home rule, or charter. In this we do not agree with counsel. It is urged that the transaction had was an extension to, and not the acquiring of, a utility. Upon this subject we have read with great care the authorities cited by counsel. They embrace the following cases: *City of Indianapolis* v. *Trust Co.,* 75 C. C. A. 442, 144 Fed. 640; *Village of Champlain* v. *McCrea,* 165 N. Y. 264 (59 N. E. 83); *Stroud* v. *Water Co.,* 56 N. J. Law, 422 (28 Atl. 578); *Connor* v. *City of Marshfield,* 128 Wis. 280 (107 N. W. 639); *Shorts* v. *City of Seattle,* 95 Wash. 531 (164 Pac. 239); *Shryock* v. *City of Zanesville,* 92 Ohio St. 375 (110 N. E. 937); *State, ex rel. Crow,* v. *City of St. Louis,* 169 Mo. 31 (68 S. W. 900); also many of our own decisions.

The length of this opinion will not permit us to analyze these cases here. We invite an examination of them. In our opinion not one of them justifies the claim made that they are controlling here. Not one of them treats the question we are here considering.

If, in the extension of the city's water plant, it becomes necessary to purchase or acquire a public utility, in our opinion the matter must be submitted to the electors of the city. The Constitution requires it, and its language should receive a strict, but reasonable, construction. The unequivocal language of section 28 of title 8 of the charter does not permit the construction claimed for it by defendant's counsel. It is a familiar maxim that, "That which is expressed makes that which is implied to cease."

Neither do we agree with the proposition that the plaintiff, as a taxpayer in the city, has no standing in a court of equity, under the facts here disclosed. Under the repealing statute, which defendant insists is in force, the claim against the city was to be paid as other claims are paid. We are of the opinion that a taxpayer has an interest in the several funds of the city, and in their integrity. We think the proposition urged too narrow a one to require discussion. The learned circuit judge dismissed the bill of complaint. His reason, briefly stated, was as follows:

"I am convinced the city commission had authority to settle the claim of the Hydraulic Company for the amount specified; that the transaction was in good faith; and that in connection with such settlement it had a lawful right to take a deed to the Hydraulic Company's property as shown."

Plaintiff has appealed. For the reasons already stated, we are unable to agree with this conclusion of the circuit judge.

The decree below will be reversed, and a decree will be entered here for the plaintiff in accordance with the prayer of his bill of complaint, with the costs of both courts.

BIRD, C. J., and SHARPE, MOORE, STEERE. BROOKE, FELLOWS, and KUHN, JJ., concurred.